Bernadette SCELTA, Plaintiff,

v.

**DELICATESSEN SUPPORT SERVICES, INC., Boar's Head Provisions Co., Inc., Joseph Egan and Robert. S. Martin, Defendants.**

No. 98–2578–CIV–T–17B.

United States District Court, M.D. Florida, Tampa Division.

June 3, 1999.

1330

1332

David P. Montgomery, Bradenton, FL, for Plaintiff.

William G. Salim, Jr., Moskowitz, Mandell, Salim & Simowitz, P.A., Ft. Lauderdale, FL, Jacqueline G. Veit, Martin S. Hyman, Golenbock, Eiseman, Assor & Bell, New York City, for defendants.

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendant, Delicatessen Support Services Inc.'s [hereinafter "Delicatessen"], Motion to Dismiss, (Dkt.15), Defendant, Boar's Head Provisions Co., Inc.'s [hereinafter "Boar's Head"], Motion to Dismiss, (Dkt.18), Defendant, Joseph Egan's [hereinafter "Defendant Egan"], Motion to Dismiss Count IV(B) of the Complaint, (Dkt.22), Defendant Robert S. Martin's [hereinafter "De-

fendant Martin"], Motion to Dismiss Counts III and IV(A) of the Complaint, (Dkt.24), and Plaintiff, Bernadette Scelta's, responses thereto, (Dkts.32, 33, 34, 35).

## I. STANDARD OF REVIEW

A district court should not dismiss a complaint unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *See Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley*, 355 U.S. at 47, 78 S.Ct. 99 (quoting FED.R.CIV.P. 8(a)(2)).

In deciding a motion to dismiss, the court can only examine the four corners of the complaint. *See Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232, 233 (M.D.Fla. 1995). "The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

In addition, a court must accept the plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995). However, when on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. *See Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir. 1991).

## II. BACKGROUND

Plaintiff originally brought this action against Defendants in the Circuit Court, in and for Sarasota County, Florida, on December 16, 1998. (Dkt.2). Defendants filed a Notice of Removal, on December 16, 1998, based on federal question jurisdiction, pursuant to 28 U.S.C. § 1331. This case was subsequently removed to the United States District Court for the Middle District of Florida. (Dkt.1).

Plaintiff's Complaint alleges that Delicatessen is a subsidiary of Boar's Head, or that it is controlled by Boar's Head, has interlocking ownership and control, and has engaged in a common enterprise with Boar's Head. The common enterprise between Delicatessen and Boar's Head acts as a wholesale food distributor and it, as well as each component of the common enterprise, employs over twenty-five (25) persons.

Plaintiff states that she was an employee of The Frank Brunckhorst Company, Boar's Head, and Delicatessen. While Plaintiff was an employee of The Frank Brunckhorst Company, Plaintiff was assigned to establish a principal place of operation for Boar's Head and Delicatessen in Sarasota County, Florida. Defendant Egan served as Plaintiff's supervisor and as an agent of Boar's Head and Delicatessen. Defendant Martin was also an agent of Boar's Head and Delicatessen and had the duty of supervising the employment decisions of Defendant Egan. Plaintiff states that she performed her duties, while employed with Boar's Head and Delicatessen, in an exemplary manner and never received a written or oral reprimand.

While residing in Sarasota County, Florida, Plaintiff and Defendant Egan, her immediate supervisor, had a short affair, which included sexual relations. Plaintiff states that Defendant Egan was married and did not want his wife or his fellow coworkers to gain knowledge of the affair.

Plaintiff alleges that during her employment with Boar's Head and Delicatessen, Plaintiff's superiors engaged in sexual harassment of Plaintiff and other female

employees, and created a sexually hostile work environment. According to Plaintiff, a sexually hostile work environment was created by actions which include, but are not limited to:

(1) [I]n or about February, 1996, a statement made by [Defendant] Martin referring to the size of [Plaintiff's] breasts;

(2) [T]hereafter, [Defendant] Martin committed battery against [Plaintiff] by touching [Plaintiff] without her express or implied consent;

(3) [A]fter February, 1996, in the presence of [Plaintiff], [Defendant] Martin pulled a female coworker onto a table and placed his body atop of her body in a sexual manner;

(4) [I]n March, 1996, another comment was made by [Defendant] Martin, at a sales meeting, while other employees and superiors were present, about the size of [Plaintiff's] breasts, as well as other lewd comments;

(5) [I]n April, 1996, at a sales meeting, [Plaintiff] and other female employees were subjected to twenty (20) minutes of comments about their breasts, which included a comment made by [Defendant] Martin stating that he would like a "cast of [a female employee's] body" before she resigned, and as a result of that comment [Plaintiff] orally objected;

(6) [Defendant] Egan denied [Plaintiff's] attempt to transfer to an open position in New York City and did so to prevent [Plaintiff] from interacting with [Defendant] Egan's wife and members of [Plaintiff's] family and, as a result of this, [Plaintiff] knew that the affair between [Plaintiff] and [Defendant] Egan was a primary consideration in decisions made that affected [Plaintiff's] career;

(7) [I]n or about June 1996, [Defendant] Egan informed [Plaintiff] that [Defendant] Egan's supervisor, Ayvazian, knew of the affair between [Defendant] Egan and [Plaintiff] and had threatened [Defendant] Egan's and [Plaintiff's] jobs;

(8) [Plaintiff] attempted to address Ayvazian's knowledge of the affair with Ayvazian, who told [Plaintiff] that "if [he] thought Joe Egan and [Plaintiff] were having a relationship, then [Plaintiff] would have been fired" and [Plaintiff] understood that to mean she would be fired, while [Defendant] Egan would remain employed;

(9) [O]n or about the week of June 6, 1996, [Defendant] Martin entered [Plaintiff's] office, grabbed his crotch, and started discussing the size of his genitals, until [Plaintiff] objected;

(10) [Plaintiff] was informed that because of the affair between [Plaintiff] and [Defendant] Egan, the company was being forced to choose between [Plaintiff] and [Defendant] Egan, and the company was choosing [Defendant] Egan;

(11) [I]n June, 1996, [Defendant] Egan referred to [Plaintiff], in the presence of a supervisor, as a "neurotic fuck";

(12) [Defendant] Egan, acting within the scope and course of his employment, deprived [Plaintiff] of the position, authority, responsibility, and financial benefit that, based upon her previous performance, had been promised to her;

(13) [D]espite [Plaintiff's] repeated efforts to address her concerns with [Defendant] Egan's supervisors, [Plaintiff] was continually directed to deal with the company only through [Defendant] Egan, who effectively froze [Plaintiff] out of any meaningful role within the company, in a successful effort to constructively fire [Plaintiff] by giving her no choice but to resign, which she did. (Dkt.2).

Counts I and II of Plaintiff's Complaint are claims for sexual discrimination against Boar's Head and Delicatessen. Count I alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e [hereinafter "Title VII"]. Count II alleges a violation of the Florida Civil Rights Act of 1992, which is contained in Chapter 760 of the Florida Statutes [hereinafter "FCRA"]. Counts I and II assert

that the actions and inactions of Boar's Head and Delicatessen constitute sexual harassment and a sexually hostile work environment.

Count III of Plaintiff's Complaint asserts a claim for intentional infliction of emotional distress. In connection with this claim, Plaintiff asserts that Defendant Martin acted in an intentional, wanton, and reckless manner when engaging in the alleged sexual conduct toward Plaintiff. Plaintiff states that Defendant Martin knew, or should have known, that his conduct toward Plaintiff caused Plaintiff emotional distress, anger, embarrassment, stress, and the loss of her business reputation. Count III also alleges that Defendant Martin acted in an outrageous manner that was beyond all decency. As a direct and proximate result of Defendant Martin's alleged conduct, Plaintiff claims to have suffered severe emotional distress, as well as the loss of her employment, and the loss of her business reputation. Plaintiff's resignation was the alleged direct and proximate result of Defendant Martin's actions.

Count IV(A) of Plaintiff's Complaint alleges battery against Defendant Martin. Plaintiff states that Defendant Martin touched Plaintiff without express or implied consent. As a result of the battery, Plaintiff alleges to have suffered great mental suffering, allegedly was forced to terminate her employment, suffered loss of opportunity for advancement, and suffered loss of her personal and professional reputation.

Count IV(B) of Plaintiff's Complaint alleges intentional interference with an advantageous business relationship against Defendant Egan. As Plaintiff's immediate and direct supervisor, Plaintiff alleges that Defendant Egan subjected Plaintiff to a sexually hostile environment and denied her all opportunities for continued success and advancement. Plaintiff specifically alleges that Defendant Egan denied Plaintiff all business opportunities by:

[N]ot allowing [Plaintiff] to acquire the essential computer training, not confirming her continued employment at Boar's Head if she remained in New York, limiting her contact with family and friends by extending her work hours so she would be present in Sarasota for him, demeaning her in front of fellow employees, supervisors and the president of the company, Martin, promising her a bonus for her long hours, and by unjustly criticizing her work product.

(Dkt.2). Plaintiff states that, as a direct and proximate result of Defendant Egan's actions, Plaintiff was forced to resign from her employment with Delicatessen, has suffered loss of employment, loss of opportunity for advancement, and loss of her professional and public reputation.

Count V of Plaintiff's Complaint alleges negligent supervision and negligent retention of Defendant Egan. Plaintiff claims that Boar's Head and Delicatessen had a duty to supervise the employment decisions of Defendant Egan and others in supervisory positions. Plaintiff claims that Boar's Head and Delicatessen failed to take reasonable steps to discover the decisions and actions of Defendant Egan and failed to take remedial actions for the decisions and actions performed by Defendant Egan, while in the scope of his employment. Plaintiff states that the actions performed by Defendant Egan were willful, wanton, and constituted foreseeable injury to Plaintiff. As a result of Boar's Head's and Delicatessen's actions, in allowing the alleged sexual harassment to continue, Plaintiff states that she was forced to resign, has suffered loss of employment, loss of opportunity for advancement, and loss of her public and private reputation.

Count VI of Plaintiff's Complaint alleges negligent supervision and negligent retention of Defendant Martin. In connection with Count VI, Plaintiff asserts that Defendant Martin subjected Plaintiff to verbal assaults, physical assaults, and a hostile work environment, denied her all opportunities for continued success and

advancement. and demeaned her in front of fellow employees, supervisors, and customers, while acting within the scope of his employment. As a result of Defendant Martin's willful and wanton sex-based discrimination, Plaintiff states that Boar's Head and Delicatessen allowed the sexual harassment to continue, caused Plaintiff to suffer loss of employment, loss of opportunity for advancement, and loss of her professional and public reputation.

Plaintiff states that she has complied with all jurisdictional prerequisites for filing a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the FCRA, Chapter 760, Florida Statutes. Specifically Plaintiff states that on or about July 6, 1998, Plaintiff filed a charge of discrimination against her "employer," Boar's Head, Delicatessen, Defendant Egan, and Defendant Martin, with the EEOC and the Florida Commission of Human Relations. On or about July 13, 1998, the Florida Commission on Human Relations transferred Plaintiff's charge of discrimination to the EEOC, pursuant to Florida's status as a deferral state and the federal and state work share agreement. The EEOC notified Plaintiff, after conducting its own investigation, on or about August 27, 1998, that Plaintiff had a right to sue within ninety (90) days of her receipt of the notification. Plaintiff filed this suit within the ninety (90) days allotted by the EEOC notice.

As to all Counts, Plaintiff demands judgment against Defendants for compensatory and punitive damages, as well as costs and attorneys' fees.

### III. DELICATESSEN'S MOTION TO DISMISS

Delicatessen states that Counts I and II of Plaintiff's Complaint, the Title VII and FCRA claims, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). Delicatessen asserts that this Court lacks subject matter jurisdiction and Plaintiff has failed to state a claim upon which relief may be granted.

In support of the dismissal of Counts I and II, Delicatessen asserts that Plaintiff has failed to allege a *prima facie* case of sexual harassment, and that even if Plaintiff had alleged a *prima facie* case, Delicatessen was not Plaintiff's "employer", as defined in Title VII, during the year in question. Delicatessen further asserts that Counts I and II should be dismissed, under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), because the claims arising from alleged physical contact between Plaintiff and Defendant Martin were not identified as acts of harassment in Plaintiff's EEOC charge, and, thus, Plaintiff failed to exhaust her administrative remedies as to those allegations.

Counts V and VI, for negligent supervision of Defendant Martin and Defendant Egan, should be dismissed, according to Delicatessen, because Plaintiff has failed to state a claim upon which relief may be granted, under Federal Rule of Civil Procedure 12(b)(6). Delicatessen claims dismissal of Counts V and VI is warranted because Plaintiff has not properly alleged an independent underlying tort, has not alleged any physical injury under Florida's "impact rule," and has attempted to plead a claim of common law sexual harassment, which is not recognized in Florida.

### A. Prima Facie Claim of Harassment

Delicatessen incorporates by reference Point II of Boar's Head's Memorandum of Law in Support of its Motion to Dismiss. (Dkt.18). Through this incorporation, Delicatessen asserts that Plaintiff's Complaint fails to allege incidents which create a sexually hostile work environment. Specifically, Delicatessen asserts that Plaintiff has not alleged that the conduct complained of directly altered or affected any term, condition, or privilege of Plaintiff's employment. In support of this assertion, Delicatessen states that the alleged incidents of harassment occurred between February and June of 1996, yet Plaintiff failed to resign from employment until October of 1997. Delicatessen states that the

eighteen (18) month delay in Plaintiff's resignation proves that the alleged harassment was not severe or pervasive enough to affect a term or condition of Plaintiff's employment. The real issue surrounding and leading to Plaintiff's resignation, according to Delicatessen, is a salary dispute. Delicatessen looks to Plaintiff's Complaint and asserts that Plaintiff's Complaint suggests that if Plaintiff had received the "bonus, increased compensation, and proper computer training" she would not have resigned.

▪ "Sexual harassment is a form of sex discrimination prohibited by Title VII[,]" and the FCRA. *See Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998) (stating that because the FCRA is modeled after Title VII, the FCRA is subject to Title VII analysis); *Rosenbaum v. Southern Manatee Fire and Rescue District,* 980 F.Supp. 1469, 1473 (M.D.Fla.1997) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). When making a claim of sexual harassment, there are two (2) possible forms that can be alleged: hostile work environment and quid pro quo. *See Rosenbaum,* 980 F.Supp. at 1473. In order to prove a *prima facie* case for sexual harassment, a plaintiff must prove that: 1) plaintiff belongs to a protected class of individuals; 2) plaintiff was subjected to unwelcome sexual harassment; 3) the harassment complained of was based on sex; 4) the harassment was sufficiently pervasive and severe, so as to alter a term, condition, or privilege of employment and create an abusive environment; and 5) respondeat superior. *See Meritor,* 477 U.S. at 63, 106 S.Ct. 2399. The EEOC guidelines state that the trier of fact must determine the existence of sexual harassment by examining the totality of the circumstances. *See Meritor,* 477 U.S. at 73, 106 S.Ct. 2399. This Court has also previously held that a *prima facie* showing in a hostile working environment is likely to consist of evidence of many or very few acts or statements by the defen-dant which, taken together, constitute harassment. *See Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1523 (M.D.Fla.1991).

In determining whether a work environment is sufficiently hostile, the Supreme Court has adopted an objective test, which states that a court may consider: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

 Employer liability for harassment is based on the common law principles of agency. *See Meritor,* 477 U.S. at 57, 106 S.Ct. 2399. Title VII's definition of an "employer" includes an employer's "agents." *See* 42 U.S.C. § 2000e(b); *Meritor,* 477 U.S. at 72, 106 S.Ct. 2399. When determining the principles of agency, a court must look to Section 219(1) of the *Restatement (Second) of Agency* (1957). *See id.* Section 219(1) of the *Restatement (Second) of Agency* states that, "a master is subject to liability for the torts of his servants committed while acting in the scope of their employment." An employer can potentially be liable for both intentional torts and negligence committed by an employee, as long as it is within the scope of his employment. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Under Title VII, intentional conduct is presumed. *See id.* Conduct is within the scope of employment if the conduct is, "actuated, at least in part, by a purpose to serve the [employer], even if it is forbidden by the employer." *See Burlington,* 524 U.S. at 742, 118 S.Ct. 2257; *Restatement (Second) of Agency* § 228(1)(c). However, sexual harassment, by a supervisor, is not, as a general rule, considered "within the scope of employment." *See Burlington,* 524 U.S. at 742, 118 S.Ct. 2257.

Employers have been held liable when employees commit torts outside the scope of employment. *See Burlington,* 524 U.S. at 742, 118 S.Ct. 2257; *Restatement (Second) of Agency* § 219(2). An employer is liable under Section 219(2) of the Restatement if, "(a) the master intended the conduct or the consequences, or (b) the master was negligent or reckless, or (c) the conduct violated a non-delegable duty of the master, or (d) the servant purported to act or speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." *See Burlington,* 524 U.S. at 742, 118 S.Ct. 2257; *see also Restatement (Second) of Agency* § 219, Cmt. e.

▇▇▇▇ Under subsection (b) of Section 219(2) of the *Restatement (Second) of Agency,* an employer is liable if the employer knew or should have known of the condition complained of by the employee, and failed to take action against it. *See Burlington,* 524 U.S. at 742, 118 S.Ct. 2257; *Faragher v. Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1272 (7th Cir.1991). An employer is considered as having actual knowledge of the situation when the employee complains of it. *See Daniels,* 937 F.2d at 1272. An employer has constructive knowledge of the situation when the condition is open and capable of observation. *See id.; Turner v. Barr,* 811 F.Supp. 1, 3 (D.D.C.1993). Once an employer has notice of the harassing behavior, the employer is required to take reasonable steps to correct it. *See Kotcher v. Rosa & Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 (2d Cir.1992). An employer may satisfy the reasonableness standard, by condemning the harassment, giving notice to employees that future harassment will be punished, and by transferring or terminating the harassers. *See id.* The reasonableness of an employer's acts will be determined as a question of fact and will rely on examination of the totality of circum-

stances. *See Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986).

▇▇▇▇ Under subsection (d) of the *Restatement (Second) of Agency,* an employer can be liable if the agency relationship aided the employee in committing the tort. *See Burlington,* 524 U.S. 742, 118 S.Ct. 2257. However, more than the fact that the agency relationship put the employee in close proximity and regular contact with the victim is required. *See id.* To show that more than the agency relationship aided in the commission of the tort, a plaintiff can show that a supervisor has taken a tangible employment action against the subordinate employee. *See id.* (defining a tangible employment action as a denial of a raise or promotion and a significant change in the employment status). A tangible employment action may only be taken by a supervisor. *See id.*

▇▇▇▇ Title VII prohibits employment discrimination on the basis of gender. 42 U.S.C. § 2000e. However, Title VII is not a "general civility code" and is not meant to prohibit workplace or employee interaction. *See Faragher,* 524 U.S. at 775, 118 S.Ct. 2275. Conduct prohibited by Title VII must be sufficiently severe and pervasive, so as to alter a term, condition, or privilege of employment. *See id.* Whether or not the alleged harassing conduct is sufficiently severe and pervasive is determined by a reasonable person test. *See id.* If a reasonable person in the plaintiff's position, considering all of the circumstances, would find the conduct sufficiently severe and pervasive, so as to alter a term or condition of employment, then the alleged conduct is sufficiently severe and pervasive. *See id.*

▇▇▇▇ In the case at hand, Plaintiff's Complaint makes several allegations in relation to the elements of a *prima facie* case for sexual harassment. The first requirement, that Plaintiff must be a member of a protected class, is met. Plaintiff is a female and has referred to herself as being a female throughout the Complaint.

The second requirement, that Plaintiff be subjected to unwelcome sexual harassment, was also alleged throughout Plaintiff's Complaint. Specifically, Plaintiff alleges that:

18. During the period of her employment by Boar's Head and Delicatessen, [Plaintiff's] superiors engaged in sexual harassment of [Plaintiff], and other female employees, and created a sexually hostile work environment . . .

18.5. In April, 1996, at a sales meeting, [Plaintiff] and other female employees were subjected to approximately twenty [20] minutes of comments about their breasts, including comments that before one of the female employees left the company[,] as a result of her resignation, [Defendant] Martin would like a 'cast of her body', however, when [Plaintiff] objected, [Defendant] Martin and another male employe[e] left the room.

18.9. On or about the week of June 6, 1996, [Defendant] Martin entered the office of [Plaintiff], grabbed his crotch and started discussing the size of his genitals, until [Plaintiff] objected and [Defendant] Martin made cursory remarks and left.

(Dkt.2).

The third requirement for a *prima facie* case of harassment, that the harassment complained of be based on sex, was also met in Plaintiff's Complaint. Plaintiff specifically alleges that:

18. During the period of her employment by Boar's Head and Delicatessen, [Plaintiff's] superiors engaged in sexual harassment of [Plaintiff], and other female employees, and created a sexually hostile work environment . . .

18.1. In or about February, 1996, when [Plaintiff] contacted [Defendant] Martin to report to [Defendant] Martin on the results of [Plaintiff's] efforts in establishing the Sarasota office, [Defendant] Martin opened the conversation by, once again, commenting upon the size of [Plaintiff's] breasts . . .

18.4. In March, 1996, at a sales meeting, [Plaintiff] was called into the office of one of her superiors, at which meeting [Defendant] Martin was present. During that meeting, [Defendant] Martin again commented on the size of [Plaintiff's] breasts and made other lewd comments about her breasts.

18.5. In April, 1996, at a sales meeting, [Plaintiff] and other female employees were subjected to approximately twenty [20] minutes of comments about their breasts, including comments that before one of the female employees left the company[,] as a result of her resignation, [Defendant] Martin would like a 'cast of (her) body' . . .

22. Boar's Head, Delicatessen[,] and its agents, [Defendant] Egan and [Defendant] Martin, created, tolerated, and encouraged a sexually hostile work environment, under which it was generally believed by employees that an employee was expected to ignore or condone the sexually charged work environment or leave their career with those companies.

(Dkt.2).

The fourth requirement to prove a *prima facie case* of sexual harassment, that the harassment must have been sufficiently severe and pervasive to alter a term, condition, or privilege of the employment relationship, is also met. Plaintiff's Complaint alleges thirteen (13) specific instances of harassment. Plaintiff also alleges that because of the alleged sexually harassing remarks and sexually harassing physical contacts while at work, Plaintiff "felt uncomfortable and embarrassed at work, and dreaded coming into contact with Defendant Martin and Defendant Egan." Plaintiff states that she endured the alleged harassment due to a common belief that employees were expected to condone and ignore the sexual harassment or leave their careers with Boar's Head and Delicatessen. Plaintiff claims to have suffered extreme detriment to her emotional well being and mental health, as well as damage to the pride Plaintiff had in her

work, interference with Plaintiff's concentration levels while working, and acute emotional distress. Plaintiff states that as a result of the discriminatory conduct of Defendants employment became impossible and Plaintiff offered to resign with the condition that the effective date of resignation be delayed until Plaintiff found another employment opportunity. On October 1, 1997, Plaintiff was forced to revise her resignation, as the discrimination had not ceased. Plaintiff arranged to resign from Boar's Head and Delicatessen without another employment opportunity. Plaintiff specifically alleged that, "[a]s a direct and proximate result of this systematic and repeated harassment, [Plaintiff] suffered loss of opportunity for advancement at Delicatessen and Boar's Head, loss of opportunity for advancement within the food distribution market, and loss of her professional and personal reputation."

The fifth, and final, requirement to show the existence of a *prima facie* case for harassment, resondeat superior, has also been sufficiently alleged. Plaintiff alleged that:

4. Delicatessen is a subsidiary of Boar's Head, or is so closely related to Boar's Head in it's operations and activities as to be controlled by Boar's Head, including interlocking ownership and control, and to have engaged in a common enterprise with Boar's Head.

7. [Defendant] Egan is a resident of the State of New York[,] but is the National Sales Director for Boar's Head and Delicatessen, directing sales operations of the National Sales Office in the State of Florida, County of Manatee.

8. [Defendant] Martin is a resident of the State of New York[,] but is the Chief Operations Officer for Boar's Head and Delicatessen, directing all operations of Boar's Head and Delicatessen from its National Sales Office in the State of Florida, County of Manatee.

10. In or about February, 1996, [Plaintiff] was an employee of the Frank Brunckhorst Company, assigned to the task of establishing a principal place of operation for Boar's Head, and the business later to be incorporated as Delicatessen, in the State of Florida, County of Sarasota.

13. [Defendant] Egan, as the agent of both Boar's Head and Delicatessen, had the duty of supervising the employment decisions affecting persons in positions, such as that occupied by [Plaintiff].

14. [Defendant] Martin, as the agent of both Boar's Head and Delicatessen, had the duty of supervising the employment decisions of [Defendant] Egan, and those employment decisions effecting persons in positions, such as that occupied by [Plaintiff].

18.2. As a result of Defendant Egan's personal considerations of protecting his own career from the effect of the affair, Defendant Egan, acting in the course and scope of his employment, deprived Plaintiff of the position, authority, responsibility, and financial benefit, which, based upon her previous work performance, previously had been promised to her.

67. The acts committed by Defendant Egan as described herein were committed within the scope of his employment during normal business hours and at Delicatessen office meetings and parties after hours, all while in the employment of Boar's Head and Delicatessen.

78. The acts committed by Defendant Martin, as described herein were committed within the scope of his employment during normal working hours and at Delicatessen office meetings and parties after hours, all while in the employment of Boar's Head and Delicatessen.

(Dkt.2).

After accepting Plaintiff's well pled facts as true, and construing Plaintiff's Complaint in the light most favorable to Plaintiff, the Court finds that dismissal of Counts I and II, under Federal Rule of Civil Procedure 12(b)(6) is not warranted. The Court finds that Plaintiff's Complaint

sufficiently alleges, for purposes of Delicatessen's Federal Rule of Civil Procedure 12(b)(6) motion, a *prima facie* case of harassment, under both Title VII and the FCRA.

### B. Subject Matter Jurisdiction

#### 1. Whether Delicatessen was Plaintiff's "Employer"

Delicatessen states that Counts I and II of Plaintiff's Complaint must be dismissed, as to Delicatessen, for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. Delicatessen alleges that dismissal is appropriate because Delicatessen was not Plaintiff's employer at the time the alleged acts took place. Delicatessen states that from February, 1996, through June, 1996, Delicatessen was not in existence and had no employees.

 Having a claim dismissed for lack of subject matter jurisdiction is "extremely" difficult and not ordinarily done. *See Simanonok v. Simanonok,* 787 F.2d 1517, 1519 (11th Cir.1986). Lack of subject matter jurisdiction may be asserted by either party or by the court, on its own motion, at any time while the action is pending. *See Whitson v. Staff Acquisition, Inc.,* No. Civ. A. 98–T–862–N, 1999 WL 172778, at * 1 (M.D.Ala.1999). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction in federal court. *See Thomson v. Gaskill,* 315 U.S. 442, 445, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980). Generally, "a district court's first duty is to determine whether it enjoys subject-matter jurisdiction, because that implicates the court's 'very power to hear the case.'" *See Whitson v. Staff Acquisition, Inc.,* No. CIV. A. 98–T–862–N, 1999 WL 172778, at *1–2 (M.D.Ala.1999) (citing *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). In determining whether or not subject matter jurisdiction exists, a court is permitted to investigate widely and has authority to look beyond the pleadings. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990). A court may review or accept any evidence submitted by the parties. *See id.*

 The present cause of action involves a factual attack on subject matter jurisdiction. When a factual attack on subject matter jurisdiction is at issue, "a court's power to make findings of fact and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of [the] plaintiff's cause of action." *Garcia, M.D. v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1260–62 (11th Cir.1997) (citing Lawrence, 919 F.2d at 1529). If the merits of a plaintiff's cause of action are not implicated in sustaining jurisdiction:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence,* 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

However, if an attack on subject matter jurisdiction also implicates an element of the cause of action:

> [T]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. . . . Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to . exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions pro-

vides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion.... [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

*Williamson v. Tucker,* 645 F.2d 404, 415–16 (5th Cir.1981).

In the case at hand, Delicatessen asserts that it is not an "employer" under Title VII or the FCRA. Delicatessen states that it could not have been Plaintiff's employer because it was not in existence at the time of the alleged discrimination and had no employees.

From the plain language of Title VII it is an unlawful employment practice for an "employer" to discriminate against an "employee" "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C § 2000e–2. The elements of a Title VII claim can be summarized as requiring a plaintiff to prove: 1) an employer; 2) failed or refused to hire, discharged, or otherwise discriminated against; 3) any individual; 4) with respect to his compensation, terms, conditions, or privileges of employment; 5) because of such individual's race, color, religion, sex, or national origin. *See id.* In other words, to recover under Title VII a plaintiff must prove that an "employer" discriminated against him/her because of his/her race, color, religion, sex, or national origin. *See id.* In order to determine if a defendant qualifies as an "employer," it is necessary to look to Title VII's definition of "employer." *See id.* Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees

for each working day in each of twenty or more calender weeks in the current or preceding calender year, and any agent of such a person[.]" *Id.*

A challenge asserting that a named defendant is not an "employer," under Title VII, implicates both subject matter jurisdiction claims and a plaintiff's substantive claims for relief. *See Garcia,* 104 F.3d at 1261–63. As the "employer" requirement of Title VII implicates both subject matter jurisdiction claims and an element of a plaintiff's cause of action, the Court is instructed to treat the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction under the standards for reviewing a 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, or a Rule 56 motion for summary judgment. *See id.* At 1263–66. Whether to use Federal Rule of Civil Procedure 12(b)(6) or Federal Rule of Civil Procedure 56 depends on whether the court has utilized and considered evidence contained outside of the parties pleadings. *See id.* at 1263–66. If a court has not utilized matters outside of the pleadings, Federal Rule of Civil Procedure 12(b)(6) should be used. *See id.* at 1263–66. However, if the court has utilized matters outside of the parties' pleadings, the court should use Federal Rule of Civil Procedure 56. *See id.* at 1265–66. If the court uses Rule 56, the court must notify the parties and allow them ten (10) days to submit relevant evidence and arguments in support of and in opposition to the merits. *See Marine Coatings of Alabama, Inc. v. United States,* 792 F.2d 1565, 1568 (11th Cir.1986), *rev'd on other grounds,* 932 F.2d 1370 (11th Cir.1991).

As the Court has not utilized matters outside of the parties pleadings, the Court will use Federal Rule of Civil Procedure 12(b)(6) in determining the sufficiency or insufficiency of Plaintiff's Complaint. The Court has accepted Plaintiffs's well pled facts as true and has considered the facts contained in Plaintiff's Complaint in the light most favorable to Plaintiff. After

reviewing the four corners of Plaintiff's Complaint, this Court finds that Plaintiff has alleged sufficient facts to withstand a 12(b)(6) motion to dismiss, as to whether or not Delicatessen is an "employer."

▮ Plaintiff's Complaint alleges that Delicatessen, Boar's Head, Defendant Egan, and Defendant Martin constitute "her employer." Plaintiff alleges that Delicatessen is a subsidiary of Boar's Head, and is so closely related to Boar's Head, due to interlocking ownership and control, that Boar's Head and Delicatessen have engaged in a common enterprise. Plaintiff states that "[t]he common enterprise, and each component corporation thereof, employs well in excess of [twenty-five] persons, including approximately [twenty-five] persons at their office in Sarasota, Florida."

As Plaintiff's previously stated allegations meet the "exceedingly low" threshold of sufficiency for a complaint to survive a 12(b)(6) motion to dismiss, the Court must deny Delicatessen's motion, originally asserted as a 12(b)(1) motion for lack of subject matter jurisdiction.

As the Court has analyzed Delicatessen's Federal Rule of Civil Procedure 12(b)(1) motion to dismiss as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, there is no need to further address Delicatessen's Federal Rule of Civil Procedure 12(b)(6) motion, which is also requested.

### 2. Exhaustion of Administrative Remedies

Delicatessen alleges that Plaintiff failed to exhaust administrative remedies because Plaintiff failed to identify acts of harassment in her EEOC charge. The acts of harassment allegedly not included within Plaintiff's EEOC charge are those that relate to alleged physical contact between Plaintiff and Defendant Martin. Delicatessen seeks dismissal of the portions of Counts I and II that relate to Defendant Martin, pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(f), for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

#### a. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

As stated previously, when deciding a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), a court is instructed to examine only the four corners of the complaint. *See Rickman,* 902 F.Supp. at 233. A court must accept a plaintiff's well pled facts as true and consider the complaint in the light most favorable to the plaintiff. *See Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683.

▮ In the case at hand, Plaintiff's Complaint, in part, factually asserts that:

30. [Plaintiff] has complied with all the jurisdictional prerequisites of Title VII of the Civil Rights Act of 1964, 42 United States Code § 2000e and sequence, and of Chapter 760 Florida Statute, Florida Civil Rights Act of 1992 ...

30.1. On or about July 6, 1998, [Plaintiff] filed a formal charge of discrimination against her employer, Boar's Head, Delicatessen, [Defendant] Egan[,] and [Defendant] Martin, with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations.

30.2. On or about July 13, 1998, the Florida Commission on Human Relations, honored [Plaintiff's] request and referred [Plaintiff's] charge to the EEOC pursuant to Florida's status as a deferral state and pursuant to the work share agreement between federal and state agencies.

30.3. After conducting its own investigation, on or about August, 27, 1998, the EEOC notified [Plaintiff] that she had the right-to-sue within ninety (90) days of her receipt of the notification.

30.4. [Plaintiff] filed this [C]omplaint within the [ninety] (90) days of the re-

ceipt of the right-to-sue notice from the EEOC.

(Dkt.2).

As Plaintiff's Complaint has specifically alleged satisfaction of all jurisdictional requirements for bringing this entire action under Title VII and the FCRA, the four corners of Plaintiff's Complaint contains sufficient allegations to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

### b. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)

As previously discussed, dismissing a claim for lack of subject matter jurisdiction is done only in extreme and rare circumstances. *See Simanonok*, 787 F.2d at 1519. Subject matter jurisdiction can be attacked factually and facially. *See id.* If subject matter jurisdiction is factually attacked, the court must determine if the merits of the plaintiffs cause of action are implicated. *See Lawrence*, 919 F.2d at 1529. If the merits of a plaintiff's cause of action are intertwined with the issue of subject matter jurisdiction, the court is instructed to examine the jurisdictional attack as a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) or Federal Rule of Civil Procedure 56. *See Williamson*, 645 F.2d at 415–16.

In the case at hand, Delicatessen asserts that subject matter jurisdiction does not exist, as to Counts I and II, because Plaintiff has failed to state claims of physical contact, between Defendant Martin and Plaintiff, in Plaintiff's EEOC charge.

"A plaintiff's charge filed with the EEOC need not be identical to the subsequently filed judicial action." *See Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989); *Liberti v. Walt Disney World Co.*, 912 F.Supp. 1494, 1502 (M.D.Fla.1995). The Eleventh Circuit has addressed differences existing in the EEOC charge and a plaintiff's resulting judicial complaint and has stated that:

As long as the allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. As we have noted . . . , "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."

Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review [are] not appropriate.

*Wu*, 863 F.2d at 1547 (citations omitted).

In the instant action, Delicatessen relies on *Liberti*, 912 F.Supp. 1494 (M.D.Fla. 1995), to establish grounds for dismissal. In *Liberti*, the Court held that a plaintiff's claim for improper touching was "of an entirely different nature" than a plaintiff's claim for a "peeping Tom" operation. *See Liberti*, 912 F.Supp. at 1502–03. As the claim for improper touching was not in the plaintiff's EEOC charge, the Court held that it lacked subject matter jurisdiction. *See id.* The Court found that the plaintiff's allegations of improper touching did not amplify, clarify, or focus the plaintiffs' earlier complaints and would not be reasonably expected to grow out of the plaintiff's charge of discrimination for an alleged "peeping Tom" scheme. *See id.*

Delicatessen's reliance on the previous interpretation of *Liberti* is misplaced. In the case at hand, Plaintiff's charge of discrimination, filed with the EEOC, alleges in part:

I felt harassed, embarrassed and uncomfortable at work because of management's *actions* towards me and towards the other women in the company,-including such situations as [Defendant] Martin commenting on the size of women's breasts and [Defendant] Martin's grabbing his genitals in front of me . . . .

I complained on several occasions to [Defendant] Egan, Van Ayvazian, and [Defendant] Martin about the way I and the other women were treated within the company and specifically their unsolicited sexual comments and *actions* at sales meetings and company parties. . . . Because the president and upper managements' *actions* and comments never changed, I felt I had no choice but to leave or to continue to subject myself to the hostile work environment.

. . . because of the *actions* of management including but not limited to those of [Defendant] Martin and [Defendant] Egan, I was forced to work in a hostile environment.

(Dkt.2) (emphasis added).

The plaintiffs in *Liberti* alleged a "peeping Tom" scheme in their charges of discrimination. *See Liberti*, 912 F.Supp. at 1502–03. However, when the *Liberti* plaintiffs filed their complaint with the Court, the plaintiffs added claims for improper touching. The improper touching alleged in *Liberti* resulted from a completely different situation than the situation contained in the plaintiffs' charge. *See id.* In fact, the Court noted that virtually all matters related to the "peeping Tom" scheme, such as who viewed the video tape, where the video camera came from, and who operated the video camera, could reasonably be expected to grow out of the discrimination charge, even those against individuals that weren't named in the plaintiffs' EEOC charge. *See id.* The Court specifically limited the "scope" of the plaintiffs' complaint to only those allegations that resulted from the alleged "peeping Tom" scheme, which was included in the plaintiff's charge. *See id.*

After careful examination of Plaintiff's charge of discrimination, the Court finds that in Plaintiff's EEOC charge, Plaintiff broadly alleged that "unsolicited sexual comments and actions" created the alleged sexually hostile work environment. Plaintiff's charge of discrimination, based on "unsolicited sexual comments and actions,"

could include instances of improper touching. Plaintiff alleged that "actions" were committed against her. The word "actions" is a very broad word, which could include any number of actions committed against Plaintiff. Accordingly, this Court finds that claims alleged for improper touching "amplify, clarify, [and] more clearly focus" Plaintiff's earlier complaints for the "unsolicited sexual actions and comments" of Defendants. A more limited claim for improper touching could reasonably be expected to grow out of the broad allegations of "unsolicited sexual comments and actions," contained in Plaintiff's charge of discrimination.

As Plaintiff's claims for improper touching are reasonably related to the charge of discrimination, the Court finds that dismissal of the portions of Plaintiff's Complaint that relate to improper touching is not warranted.

### c. Motion to Strike

■ Federal Rule of Civil Procedure 12(f) provides that upon motion by a party or upon the court's initiative at any time, the court may order stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter." *See Seibel v. Society Lease, Inc.*, 969 F.Supp. 713, 715 (M.D.Fla.1997). A motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *See id.; Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 570 (S.D.Fla.1978) (citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir.1962)). Federal Rule of Civil Procedure 12(f) entitled "Motion to Strike" plainly and clearly states that a motion to strike may be filed "upon motion by a party within 20 days after service of the pleading upon the party."

■ Delicatessen requests that the Court strike Counts I and II of Plaintiff's Complaint. As the Court has found that dismissal of Counts I and II of Plaintiff's

Complaint is not warranted, the Court will not strike Counts I and II from Plaintiff's Complaint. The allegations contained in Counts I and II of Plaintiff's Complaint are related to the controversy and will not cause prejudice to the parties. Therefore, the Court will not strike Counts I and II from Plaintiff's Complaint.

### C. Negligent Supervision

Delicatessen asserts that Counts V and VI of Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff, according to Delicatessen, has not properly alleged an independent underlying tort or any damage consistent with the State of Florida's "impact rule." Delicatessen states that Plaintiff has erroneously attempted to recast her sexual harassment claim as a common law harassment claim.

Under Florida law, the underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law. *See Hays v. Patton–Tully Transp. Co.,* 844 F.Supp. 1221, 1221–24 (W.D.Tenn.1993); *Williams v. Feather Sound, Inc.,* 386 So.2d 1238, 1239–40 (Fla. 2d DCA 1980). Florida law does not recognize a common law cause of action for sexual harassment. *See Ball v. Heilig–Meyers Furniture Co.,* 35 F.Supp.2d 1371, 1375 (M.D.Fla.1999); *Robertson v. Edison Bros. Stores, Inc.,* No. 94–1315–CIV–ORL–19, 1995 WL 356052, at *1–2 (M.D.Fla.Apr.11, 1995). As a result, Florida law does not recognize a common law cause of action based on the negligent failure to maintain a workplace that is free of sexual harassment. *See Vernon v. Medical Management Assoc. of Margate,* 912 F.Supp. 1549, 1563–64 (S.D.Fla.1996) (dismissing a plaintiff's claim for negligent retention and negligent supervision because the underlying misconduct alleged, in the portion of the complaint that sought relief for negligent supervision or retention, was merely sexual harassment).

Under Florida law, negligent retention is a valid cause action if "during the course of employment, the employer becomes aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *See Degitz v. Southern Management Servs., Inc.,* 996 F.Supp. 1451, 1462 (M.D.Fla.1998) (citing *Watson v. City of Hialeah,* 552 So.2d 1146, 1148 (Fla. 3d DCA 1989); *Garcia v. Duffy,* 492 So.2d 435, 439 (Fla. 2d DCA 1986)). While negligent retention may be shown where the employer fails to act as required by law, in order to recover damages for emotional distress caused by the negligence of another, a plaintiff must comply with Florida's "impact rule." *See Degitz,* 996 F.Supp. at 1461. Under Florida's "impact rule," the emotional distress complained of must flow from a physical injury sustained by physical impact. *See id.* (citing *Goodstein v. Gunther Motor Co.,* No. 95–6678, 1996 WL 903950, at * 14 (S.D.Fla. Sept.12, 1996); *Landry v. Florida Power & Light Corp.,* 799 F.Supp. 94, 96 (S.D.Fla.1992); *R.J. v. Humana of Florida, Inc.,* 652 So.2d 360 (Fla.1995)).

Although Plaintiff's Complaint contains counts for battery and intentional infliction of emotional distress, Plaintiff fails to allege in Counts V and VI that either Delicatessen or Boar's Head was guilty of negligent supervision or retention based on the alleged battery or intentional infliction of emotional distress. Counts V and VI focus only on Delicatessen's and Boar's Head's duty to maintain a workplace free of sexual harassment. As Florida's "impact rule" requires a plaintiff to base his or her claim on a physical impact, Plaintiff's claim, as asserted within the four corners of Plaintiff's Complaint, should be dismissed. Counts V and VI fail to state a claim upon which relief may be granted because they do not state that the alleged injuries Plaintiff suffered are the

result of the alleged battery or intentional infliction of emotional distress. Accordingly, the Court must dismiss Counts V and VI of Plaintiff's Complaint.

## IV. BOAR'S HEAD'S MOTION TO DISMISS

Boar's Head states that Plaintiff's Complaint, as to Boar's Head, should be dismissed for want of personal jurisdiction. Plaintiff's Complaint, according to Boar's Head, contains three (3) incorrect statements, which include: 1) that Boar's Head has its "principal place of operations in the State of Florida"; 2) that Delicatessen is a subsidiary of Boar's Head (or is so closely integrated with Boar's Head as to constitute the same business) and acts as the "National Sales Office" for Boar's Head; and 3) that Boar's Head and Delicatessen act jointly as "a wholesale food distributor." Boar's Head also asserts that dismissal of Counts I and II is warranted because Plaintiff has failed to state a prima facie claim of harassment and because this Court lacks subject matter jurisdiction. Boar's Head states that this Court lacks subject matter jurisdiction because Boar's Head was not Plaintiff's employer and because Plaintiff failed to name Boar's Head in her charge of discrimination filed with the EEOC. In the alternative, according to Boar's Head, the aspects of Plaintiff's statutory claims based on alleged improper touching should be dismissed. Counts V and VI, alleging negligent supervision, according to Boar's Head, should also be dismissed as a matter of law.

### A. Subject Matter Jurisdiction

Plaintiff's Complaint states that Boar's Head has its principal place of business in the State of Florida, that Delicatessen and Boar's Head are subsidiaries and closely integrated, and that Boar's Head and Delicatessen act jointly as a wholesale food distributor.

▆▆▆ A defendant may bring a motion for lack of personal jurisdiction at his/her option. See Fed.R.Civ.P. 12(b). A court is not required to hold a hearing on a defendant's motion for dismissal based on lack of personal jurisdiction. See Structural Panels, Inc. v. Texas Aluminum Indus., Inc., 814 F.Supp. 1058, 1063–64 (M.D.Fla.1993). However, if a court does not hold a discretionary hearing on the motion to dismiss for lack of personal jurisdiction, the court must accept the facts alleged in the plaintiff's complaint as true and must construe all factual conflicts and all reasonable inferences in the plaintiff's favor. See id. A plaintiff must establish a prima facie case for personal jurisdiction over the defendant[s] by presenting "sufficient evidence to defeat a motion for directed verdict." See id.; Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990).

▆▆▆ If a plaintiff establishes sufficient material facts to form a basis for in personam jurisdiction, within the pleadings, the defendant may submit affidavits or pleadings to challenge the plaintiff's allegations. See id.; Prentice v. Prentice Colour, Inc., 779 F.Supp. 578, 586 (M.D.Fla. 1991). When challenging the plaintiff's allegations of in personam jurisdiction, the defendant bears the burden of showing that personal jurisdiction exists. See id. If the defendant satisfies its burden, the plaintiff must then come up with support for its allegations. See Prentice, 779. F.Supp. at 586. The plaintiff may no longer merely rely on the pleadings set forth in the complaint. See id.

▆▆▆ In determining whether a court has personal jurisdiction over a nonresident defendant, the court must determine: (1) [W]hether the state long-arm statute permits assertion of jurisdiction; and (2) whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice" under International Shoe Co. v. Washington, 326 U.S.

310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

*Structural Panels, Inc.,* 814 F.Supp. at 1064 (citing *Cable/Home Communication Corp.,* 902 F.2d at 855).

 Under the first requirement, that the state long-arm statute permits assertion of jurisdiction, Plaintiff has alleged sufficient jurisdictional facts to bring an action against Boar's Head. The Florida long-arm statute, Fla.Stat. § 48.193, provides, in relevant part, that a basis for personal jurisdiction exists in situations where:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortuous act within this state. . . .

(f) Causing an injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Plaintiff has satisfied the first prong of the Eleventh Circuit's two-prong analysis, by alleging in the Complaint that:

(1) All conduct stated in the Complaint occurred in the State of Florida, County of Sarasota;

(2) Boar's Head is a corporation based in New York, but has its principal place of operation in the State of Florida, County of Sarasota;

(3) Delicatessen is a subsidiary of Boar's Head or, due to interlocking ownership, is engaged in a common enterprise with Boar's Head;

(4) Boar's Head has its principal place of business in the State of Florida, County of Sarasota;

(5) Plaintiff was an employee of The Frank Brunckhorst Company assigned to the task of establishing a principal place of operation for Boar's Head, and the business later to be incorporated as Delicatessen, in the State of Florida, County of Sarasota;

(6) [T]he common enterprise of Boar's Head and Delicatessen, acts as a wholesale food distributor with an office in the State of Florida, County of Sarasota;

(7) Defendant Egan is a resident of New York, but is the National Sales Director for Boar's Head and Delicatessen in the State of Florida, Sarasota County;

(8) Defendant Martin is a resident of the State of New York, but is the Chief Operations Officer for Boar's Head and Delicatessen and operates out of the State of Florida, Sarasota County;

(9) Defendant Martin and Defendant Egan acted as agents of Boar's Head and Delicatessen; and

(10) Most importantly, it was while allegedly employed by the common enterprise of Boar's Head and Delicatessen that Plaintiff was subjected to the sexually hostile environment, sexual discrimination, battery, and intentional infliction

of emotional distress, committed by Boar's Head, Delicatessen, Defendant Martin, and Defendant Egan.

(Dkt.2).

As Plaintiff has alleged sufficient material facts within the Complaint to form a basis for in personam jurisdiction, Boar's Head may challenge the allegation through the submission of affidavits and pleadings. *See Structural Panels, Inc.*, 814 F.Supp. at 1063–64; *Cable/Home Communication Corp.*, 902 F.2d at 855; *Prentice*, 779 F.Supp. at 586. In response to Plaintiff's allegations, Boar's Head submitted an affidavit stating that:

(1) Delicatessen is not a subsidiary of Boar's Head;

(2) Van Ayvazian is the president of Boar's Head and is not an officer, director, or employee of Delicatessen;

(3) Boar's Head does not own any stock in Delicatessen;

(4) Boar's Head does not engage in the wholesale "distribution" business;

(5) Boar's Head products are distributed by Frank Brunckhorst Co, L.L.C., a limited liability company, to independent jobbers and ultimately to retailers;

(6) Delicatessen is a sales support company which assists Frank Brunckhorst Co. in marketing Boar's Head products;

(7) Boar's Head does not sell products to Delicatessen;

(8) Delicatessen has maintained its own payroll and its own managers and employees;

(9) On occasion Boar's Head may provide administrative assistance or support to Delicatessen, but it does not involve itself in the day-to-day operations of Delicatessen;

(10) Delicatessen does not consolidate its financial statements with those of Boar's Head;

(11) Boar's Head has no operations and does not maintain an office in Florida;

(12) Boar's Head is a New York corporation with its principal place of business in Brooklyn, New York, and manufactures its products in New York, Arkansas, and Virginia only;

(13) Boar's Head has no offices or operations in Florida, does not conduct any business in the State of Florida, has no employees in Florida, has not sold products to distributors or retailers in Florida, is not qualified to do business in Florida, has not directed any advertising in the State of Florida, has no marketing efforts in the State of Florida, has not filed tax returns in the State of Florida, maintains no bank accounts in Florida, and has no authorized agents in the State of Florida, and lastly,

(14) Defendant Egan is not employed by Boar's Head and has never been a "National Sales Director" for Boar's Head.

(Dkt.17).

Boar's Head's affidavit, however, fails to mention Defendant Martin and the alleged employment or agency relationship Defendant Martin had with Boar's Head. As Boar's Head has not satisfied its burden in challenging Plaintiff's jurisdictional allegations as to Defendant Martin, Boar's Head's Motion to Dismiss for lack of personal jurisdiction cannot be granted.

Even if Boar's Head had satisfied its burden of challenging Plaintiff's jurisdictional allegations, Plaintiff has successfully alleged through affidavit support for the jurisdictional allegations made. Plaintiff's affidavit, submitted in support of the allegations contained in Plaintiff's Complaint, states, with supporting documentation, that Boar's Head has acknowledged through memoranda and letters that there was a relationship between Plaintiff and Boar's Head. (Dkt.33). Further, the Court finds, after considering the pleadings and affidavits submitted by the parties, that Boar's Head and Delicatessen each retained significant authority and control over matters occurring in the State of Florida.

The Eleventh Circuit, in *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1360

(11th Cir.1994) recognized that where business entities are in fact separate but "share or codetermine matters governing the essential terms and conditions of employment" a joint employer concept exists. Whether sufficient control is maintained is a question of fact, which should be supported by the record. *See id.*

In the present cause of action, Plaintiff has alleged throughout the Complaint and supporting affidavits that Delicatessen and Boar's Head are so closely related, through operation and control, that they are engaged in a common enterprise. Plaintiff's Complaint supports the allegation that Boar's Head and Delicatessen are joint-employers by setting forth allegations that Defendant Martin is the Chief Operations Officer of Boar's Head, is an agent of Delicatessen and Boar's Head, and holds the duty of supervising the employment decisions of Defendant Egan, who is allegedly a sales director for the common enterprise of Boar's Head and Delicatessen and Plaintiff's immediate supervisor. Plaintiff further supports the claim that Boar's Head and Delicatessen are joint-employers by stating such things as: (1) Plaintiff reported to Defendant Martin concerning the results of Plaintiff's efforts in establishing the Sarasota office; and (2) In June, 1996, Plaintiff was told that Defendant Egan's and Plaintiff's employment was threatened by Ayvazian, Plaintiff's superior and, according to Boar's Head's affidavit in support of Boar's Head's Motion to Dismiss, (Dkt.21), the president of Boar's Head.

After considering the pleadings and affidavits submitted, the Court finds that Plaintiff has sufficiently alleged facts to show that Delicatessen and Boar's Head are joint employers, for purposes of this motion. Defendant has failed to satisfy the burden on challenging Plaintiff's jurisdictional allegations.

As Boar's Head has not satisfied its burden of challenging Plaintiff's jurisdictional allegations, the Court must now address the second prong of the Eleventh Circuit's two-prong analysis, which is the requirement of due process. The due process analysis also involves a two-part inquiry, which includes: (1) whether a defendant has established sufficient minimum contacts with the State of Florida; and (2) whether the exercise of jurisdiction over the defendant would offend "traditional notions of fair play and justice." *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630–31 (11th Cir.1996) (quoting *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Court "may exercise specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities to the forum state and the alleged injury to the forum resident arises out of those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The nonresident's contact with the forum state must be related to the plaintiff's cause of action. *See Sculptchair*, 94 F.3d at 631). The contacts must also involve "some purposeful availment of the privilege of conducting activities within the forum thereby invoking the benefits and protections of its laws." *See id.* The nonresident's activities and connections with the forum state must be such that the defendant would "reasonably anticipate being haled into court there." *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1985).

Boar's Head asserts that specific jurisdiction cannot be asserted over Boar's Head because Boar's Head was not Plaintiff's employer and Boar's Head does not have minimum contacts with the State of Florida.

At the outset, the Court notes that an exchange of information over the telephone is not sufficient to establish specific jurisdiction. *See Sun Bank v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034–35 (11th Cir.1991). The Court also notes that while Plaintiff's Complaint does contain allegations of sexually harassing phone con-

versations, Plaintiff's Complaint does not completely rely on those phone conversations for jurisdiction. Specifically, Plaintiff has alleged, and Boar's Head has failed to address, that while Plaintiff was employed by Boar's Head, Defendant Martin, while acting within the scope of his employment with Boar's Head, and the common enterprise between Boar's Head and Delicatessen, engaged in conduct and actions that amount to battery within the State of Florida. Accordingly, the Court finds that Boar's Head has had, according to the pleadings and affidavits submitted, sufficient contacts with the State of Florida to satisfy the first prong of the due process analysis.

The second prong of the due process analysis requires the Court to determine whether the notions of fair play and substantial justice comport with the exercise of personal jurisdiction over Boar's Head. To determine whether the assertion of personal jurisdiction will comport with fair play and substantial justice, Boar's Head's alleged contacts with the forum state must be considered in light of the potential burden defending the lawsuit in the State of Florida would have on Boar's Head, the State of Florida's interest in adjudicating the dispute, Plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the dispute, and the shared interests of other states in furthering fundamental substantive social policies. *See Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir.1990). As discussed previously, Plaintiff has alleged, and Boar's Head has failed to address, sufficient contacts with the State of Florida for Boar's Head to "reasonably anticipate being haled into court" in the State of Florida. Accordingly, this Court finds that Boar's Head's Motion to Dismiss, for lack of personal jurisdiction, should be denied.

### B. Prima Facie Harassment Claim

For the reasons previously stated in the Court's discussion of Delicatessen's Motion to Dismiss, (Dkt.15), the Court finds that Plaintiff has sufficiently alleged a *prima facie* claim of harassment.

### C. Subject Matter Jurisdiction

#### 1. Whether Boar's Head was Plaintiff's Employer

For the reasons previously stated in the Court's discussion of Delicatessen's Motion to Dismiss, (Dkt.15), on the same issue, the Court finds that Plaintiff has alleged sufficient facts to withstand a 12(b)(6) motion to dismiss. The Court has accepted Plaintiff's well pled facts as true and has considered them in the light most favorable to Plaintiff.

#### 2. Exhaustion of Administrative Remedies

In the case at hand, Boar's Head claims subject matter jurisdiction is lacking because Plaintiff has failed to exhaust her administrative remedies, by failing to name Boar's ·Head in her charge of discrimination. However, Plaintiff did in fact name Defendant Martin in the charge.

"Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir.1989). Naming a party in the EEOC charge provides notification to the charged party of the allegations asserted against that party and allows that party a chance to participate in reconciliation and voluntary compliance. *See id.* Courts, however, have liberally construed the naming requirement. *See Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1358 (11th Cir.1994); *Alvarado v. Board of Trustees*, 848 F.2d 457, 460 (4th Cir.1988); *Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir.1981). Where an unnamed party in the EEOC charge has already benefitted from the protections afforded by the naming requirement, the unnamed party may be subjected to jurisdiction in federal court.

*See Virgo,* 30 F.3d at 1359; *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 905 (7th Cir. 1981).

█ When determining whether the purposes of Title VII are met:

[C]ourts do not apply a rigid test but instead look to several factors including: (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.... Other factors may be relevant depending on the specific facts of the case.

*Virgo,* 30 F.3d at 1359 (citing *Eggleston,* 657 F.2d at 905; *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977)).

█ The procedures referred to in, and required by, Title VII are not intended to be a "stumbling block" to the accomplishment of the statutory objectives of Title VII. *See Hammer v. Hillsborough County,* 927 F.Supp. 1540, 1543 (M.D.Fla. 1996) (citing *Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670, 688 (D.Md.1979)). In *Romero v. Union Pacific R.R.,* 615 F.2d 1303, 1311 (10th Cir. 1980), the court noted that "EEOC complaints are generally written by lay persons unfamiliar with Title VII's technical requirements." The court also noted that the technical requirements of Title VII "must be liberally construed in order to accomplish the purposes of the Act." *See id.* Two (2) exceptions to the requirement that each defendant be named in the EEOC charge of discrimination exist: "(1) where the body of the charge contains an informal reference to the defendant, or (2) where sufficient 'identity of interest' between the named respondent and the un-

named defendant exists, such that Title VII's intent to provide the defendant with notice and an opportunity to attempt conciliation is satisfied." *See Hammer,* 927 F.Supp. at 1543–44.

█ In determining whether an "employer," under Title VII, can consist of multiple alleged "employers," to satisfy the naming requirement of Title VII the court is instructed to consider several factors. *See McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 933 (11th Cir. 1987). The court is instructed to determine whether the multiple "employers" are "highly integrated with respect to ownership and operations." *See id.* The court is instructed to consider factors such as: (1) common management; (2) centralized control of labor relations; (3) common financial control; and (4) interrelation of operations. *See id.*

Boar's Head argues that under the latter exception, sufficient "identity of interest" does not exist. Plaintiff counters this argument by stating that Plaintiff has sufficiently complied with the five-part test recognized in *Virgo.*

█ After considering: (1) the similarity of interest between the named parties, Defendant Martin, Delicatessen, and Boar's Head; (2) whether Plaintiff could have ascertained the identity of Boar's Head at the time the EEOC charge was filed; (3) whether Boar's Head received adequate notice of the charge; (4) whether Boar's Head had an adequate opportunity to participate in the reconciliation process; and (5) whether Boar's Head was prejudiced by its exclusion from the EEOC proceedings, the Court finds that a sufficient "identity of interest" has been established. The Court finds that Defendant Martin, Boar's Head, and Delicatessen have similar interests. Boar's Head and Delicatessen had common management, centralized control of labor relations, and interrelation of operations, through Defendant Egan, Defendant Martin, and Ayvazian. While Boar's Head's affidavit in sup-

port of its Motion to Dismiss states that Defendant Egan is not employed by Boar's Head and has never been a "National Sales Director" for Boar's Head, it does not say that Defendant Egan was not an employee of Boar's Head at the time the alleged discrimination took place.

Plaintiff alleges that Defendant Egan was an agent of Boar's Head, Delicatessen, and the common enterprise between Boar's Head and Delicatessen at the time the alleged discriminatory conduct took place. Defendant Martin was allegedly one of Plaintiff's supervisors and an agent of Boar's Head, Delicatessen, and the common enterprise between Boar's Head and Delicatessen. Ayvazian is the president of Boar's Head. While Boar's Head submitted an affidavit in support of its Motion to Dismiss, which stated that Ayvazian is not an officer or employee of Delicatessen, neither Boar's Head nor the affidavit address Plaintiff's allegations concerning the apparent authority Ayvazian held over Plaintiff and other employees of Boar's Head, Delicatessen, and the common enterprise between Boar's Head and Delicatessen. Plaintiff alleges that Ayvazian held sufficient authority over Plaintiff and others to have the ability to terminate their employment. All of these allegations, in particular, as well as allegations contained in the pleadings and affidavits submitted by the parties, lead the Court to conclude that Boar's Head and Delicatessen are "highly integrated with respect to ownership and operations." Therefore, Boar's Head and Delicatessen have similar interests. The first factor in considering whether the purposes of Title VII are met is therefore satisfied.

The Court also finds, after considering the factors set out in *Virgo*, that Boar's Head has benefitted from the protections afforded through the naming requirement. Boar's Head, through the "highly integrated" common enterprise between Boar's Head and Delicatessen, has received adequate notice of the EEOC charge, has had an opportunity to participate in the recon-

ciliation process, and has not been prejudiced by its exclusion from the EEOC proceedings. Furthermore, Plaintiff has asserted that Plaintiff did not have the ability to determine the identity of Boar's Head at the time the EEOC charge was filed. Plaintiff asserts that it was her belief that naming Delicatessen would suffice, as Delicatessen and Boar's Head were involved in a common enterprise that was "highly integrated with respect to ownership and operations."

Boar's Head has received adequate notice of the charge of discrimination on several levels. Boar's Head has submitted a true and correct copy of Plaintiff's charge of discrimination, (Dkt.20), which is dated July 14, 1998, is titled "Respondent's Copy," and is addressed to the Human Resource Director at Boar's Head Provisions Co., Inc., located in Brooklyn, New York. Both Defendant Martin, the alleged supervisor and agent of Boar's Head, Delicatessen, and the common enterprise between Boar's Head and Delicatessen, and Delicatessen, which is one half of the common enterprise, were named on the face of the Notice of Charge of Discrimination as "the employer who discriminated against me." Boar's Head knew, or should have known, that an employee, and agent, of its company and the common enterprise operated by Boar's Head and Delicatessen was being named in the Plaintiff's charge of discrimination. Boar's Head also should have known that the common enterprise between Boar's Head and Delicatessen was being named as a "the employer who discriminated against me." Furthermore, receipt of the Notice of Discrimination, labeled as Respondent's Copy, should have notified Boar's Head that they were, in fact, a respondent. After considering the pleadings, affidavits and applicable law, the Court finds that sufficient identity of interest exists between Delicatessen and Boar's Head. Therefore, Boar's Head's Motion to Dismiss for lack of subject matter jurisdiction on the ground that Boar's

Head was not named in the EEOC charge is not warranted.

### 3. Improper Touching

For the reasons previously stated in the Court's discussion of Delicatessen's Motion to Dismiss, (Dkt.15), the Court finds that Plaintiff's claims for improper touching should not be dismissed.

### D. Negligent Supervision and Retention

For the reasons previously stated in the Court's discussion of Delicatessen's Motion to Dismiss, the Court finds that Plaintiff's claims for negligent supervision and retention, Counts V and VI, shall be dismissed.

## V. DEFENDANT EGAN'S MOTION TO DISMISS

Defendant Egan alleges that Count IV(B) of Plaintiff's Complaint should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Egan states that dismissal is warranted because Plaintiff purports to assert a claim for "intentional interference with an advantageous business relationship," without alleging that her employment relationship was other than "at will", and that even if the Court finds that Plaintiff has sufficiently alleged that her employment relationship was other than "at will," Plaintiff cannot tortiously interfere with her own contract or business relationship.

As stated previously, in deciding a motion to dismiss for failure to state a claim upon which relief may be granted, a court must only consider the four corners of Plaintiff's Complaint. *See Rickman,* 902 F.Supp. at 232. The court must also consider the Complaint in the light most favorable to the Plaintiff. *See Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683.

Under Florida law, five (5) elements must be established to state a claim for tortious interference of a business relationship: (1) the existence of a business relationship under which the claimant has rights, (2) the defendant's knowledge of the relationship, (3) an intentional and un-

justified interference with the relationship, (4) by a third party, and (5) damage to the claimant caused by the interference. *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.,* 944 F.Supp. 1538, 1569 (S.D.Fla.1996). This claim relies on an "identifiable and mutual binding agreement or employment contract." *See id.* As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered. *See id.* An "at will" employment relationship cannot satisfy the first requirement for proving an intentional interference with an advantageous business relationship. *See Weld v. Southeastern Cos., Inc.,* 10 F.Supp.2d 1318, 1322 n. 8 (M.D.Fla., 1998).

The State of California and the State of Massachusetts are the only two (2) states to provide employees with a "nondisclaimable duty of good faith and fair dealing." *See id.* "As an 'at will' employment state, the application of such a doctrine in Florida is tenuous at best when considering that an employee must prove *implied contract* at the very least." *See id.* Under Florida law an employment contract will be assumed to be "at will" unless the employment contract contains a definite term or date indicating otherwise. *See Weld,* 10 F.Supp.2d at 1322-23; *Caster v. Hennessey,* 727 F.2d 1075, 1077 (11th Cir.1984) (citing *Roy Jorgensen Assoc., Inc. v. Deschenes,* 409 So.2d 1188 (Fla. 4th DCA 1982)). Under Florida law, "a cause of action for tortious interference does not exist against one who is a party to the business relationship allegedly interfered with." *See Genet Co. v. Annheuser-Busch, Inc.,* 498 So.2d 683, 684 (Fla. 3rd DCA 1986).

Plaintiff relies on paragraphs 10, 18, 56, 57, 58, 60, and 61 of the Complaint to satisfy the requirements for proving an intentional interference with an advanta-

geous business relationship. These allegations state that Plaintiff was assigned to a particular task while working with Boar's Head and Delicatessen, Defendant Egan was Plaintiff's direct supervisor and had authority over Plaintiff, Plaintiff was exposed to sexual harassment and a sexually hostile environment, while employed with Boar's Head and Delicatessen, Defendant Egan subjected Plaintiff to the sexually hostile work environment and, thus, denied Plaintiff all opportunities for success and advancement, Defendant Egan exerted control over Plaintiff that was motivated by sexual impulse and that was designed to intimidate Plaintiff and benefit Defendant Egan, and as a result of Defendant Egan's pursuit of his personal interest, Plaintiff was forced to resign from her employment.

In determining the sufficiency of the Plaintiff's claim, the Court may only consider the allegations found in the four corners of the Complaint. *See Rickman*, 902 F.Supp. at 232. Accepting the allegations contained in Plaintiff's Complaint as true, the Court finds that Count IV(B) of Plaintiff's Complaint has failed to state a cause of action under Florida law and should be dismissed.

Plaintiff has failed to state a cause of action under Florida law, because: (1) Plaintiff has not alleged that her employment relationship with Boar's Head, Delicatessen, or the common enterprise between Boar's Head and Delicatessen, was anything other than an "at will" employment relationship, and (2) because Plaintiff has failed to allege that Defendant Egan is a third party to the alleged employment relationship or contract, if one existed, which the Court has determined, based on the face of Plaintiff's Complaint, does not. Accordingly, the Court finds that Count IV(B) of Plaintiff's Complaint fails to state a cause of action upon which relief may be granted and Count IV(B) shall be dismissed.

## VI. DEFENDANT MARTIN'S MOTION TO DISMISS

Defendant Martin alleges that Counts III and IV(A) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Martin states that dismissal is warranted because Plaintiff has not alleged the "extreme or outrageous" conduct required to satisfy making a claim of intentional infliction of emotional distress. Defendant Martin also states that Plaintiff has failed to allege actual touching that is sufficient to constitute battery.

### A. Intentional Infliction of Emotional Distress

Florida law imposes a very high standard on a plaintiff alleging intentional infliction of emotional distress in the employment realm. *See Golden v. Complete Holdings, Inc.*, 818 F.Supp. 1495, 1499 (M.D.Fla.1993); *see also Hayes v. Liberty National Life Insurance Co.*, No. 94–425–CIV–J–10, 1995 WL 500896, at *3–4 (M.D.Fla.1995); *Blount v. Sterling Healthcare Group*, 934 F.Supp. 1365, 1370–71 (S.D.Fla.1996). To state a claim for intentional infliction of emotional distress under Florida law, Plaintiff must allege that: (1) Defendant Egan negligently or recklessly inflicted mental suffering, (2) by outrageous conduct, (3) Defendant Egan's conduct must have caused the suffering; and (4) the suffering must have been severe. *See Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir.1990); *Metropolitan Life Insurance Co. v. McCarson*, 467 So.2d 277, 278 (Fla.1985). In order to satisfy the requirement for outrageous conduct, Plaintiff must allege that the conduct "goes beyond all bounds of decency and [is] regarded as atrocious, and utterly intolerable in a civilized economy." *See Metropolitan Life Insurance Co.*, 467 So.2d at 278–79.

In Florida, "the issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress

is a legal question ... for the court to decide as a matter of law." *See Vance v. Southern Bell Telephone Co.*, 983 F.2d 1573, 1575 n. 7 (11th Cir.1993); *Baker v. Florida Nat'l Bank*, 559 So.2d 284, 287 (Fla. DCA 1990). In the employment context, Florida law has a "strong disfavor" for claims of intentional infliction of emotional distress. *See Hayes*, No. 94–425–CIV–J–10, 1995 WL 500896 at * 3–4; *Blount*, 934 F.Supp. at 1370–71. Florida law does not, however, create an absolute bar to a claim of intentional infliction of emotional distress in an employment situation. *See Urquiola v. Linen Supermarket, Inc.*, No. 94–14–CIV–ORL–19, 1995 WL 266582, at * 2–3 (M.D.Fla.1995); *Stockett v. Tolin*, 791 F.Supp. 1536, 1556 (S.D.Fla. 1992).

■ Plaintiff, in the case at hand, relies on paragraphs 18, 43, 44, and 46 of the Complaint to satisfy the requirements for alleging a claim for intentional infliction of emotional distress. These paragraphs state that Plaintiff was subject to a sexually hostile work environment by several instances of verbal harassment and one instance of actual touching, that Defendant Martin acted in an intentional, wanton, and reckless manner toward Plaintiff, that Defendant Martin knew or should have known that his conduct caused Plaintiff emotional distress, anger, embarrassment, stress, and the loss of her reputation, and that as a direct and proximate result of Defendant Martin's actions toward Plaintiff, Plaintiff suffered severe emotional distress.

Plaintiff's Complaint, however, fails to establish the extreme and outrageous conduct necessary to establish a claim of intentional infliction of emotional distress. *See Urquiola*, No. 94–14–CIV–ORL–19, 1995 WL 266582, at *4 (stating that "plaintiff's complaint went beyond mere harassment or verbal abuse," and that repeated groping and kissing, offensive touching, and other physical abuse could be viewed cumulatively by an ordinary reasonable person as being outrageous and severe);

*Howry v. Nisus, Inc.*, 910 F.Supp. 576, 580–81 (M.D.Fla.1995) (stating that where an employer physically touched both employees and himself in a suggestive manner, using obscene language, and commenting on sex organs, was insufficient under Florida law to state a claim for intentional infliction of emotional distress); *Stockett*, 791 F.Supp. at 1556 (stating that repeated physical contacts could be viewed, and coupled with verbal harassment, to establish an outrageous environment). Plaintiff merely alleges one (1) instance of offensive touching and several incidents of verbal harassment.

Upon viewing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has not alleged conduct of an outrageous and severe nature, as required by Florida law. Therefore, Plaintiff's claim for intentional infliction of emotional distress, contained in Count III of Plaintiff's Complaint, must be dismissed.

### B. Battery

Defendant Martin states that dismissal of Count IV(A) of Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), is warranted because Plaintiff has failed to state that an actual touching occurred. Plaintiff, according to Defendant Martin, merely alleges that an attempted touching has occurred and, therefore, Plaintiff has failed to satisfy the requirements for alleging the commission of a battery.

■ Under Florida law, the elements of battery are "actually and intentionally touching or striking another person against the will of that person." Fla.Stat. § 784.03 (1991). *See Biles v. State*, 700 So.2d 166, 167 (4th DCA 1997); *Hamrick v. State*, 648 So.2d 274, 276 (4th DCA 1995). Plaintiff's Complaint alleges that Defendant Martin committed battery by *"touching"* Plaintiff without her express or implied consent. Plaintiff describes the alleged battery committed against her, by stating that Defendant Martin attempted to put his hands down Plaintiff's dress.

The Court finds that Defendant Martin is alleged to have committed an actual and intentional touching, against the will of Plaintiff. Therefore, as Plaintiff has sufficiently alleged battery, under Florida law, within the four corners of Plaintiff's Complaint, the Court finds that Defendant Martin's Motion to Dismiss Count IV(A) of Plaintiff's Complaint, for failure to state a claim upon which relief may be granted, must be denied. Accordingly, it is

**ORDERED** that Defendant, Delicatessen Support Services, Inc.'s, Motion to Dismiss, (Dkt.15), be **GRANTED** without prejudice, as to Counts V and VI, and **DENIED,** as to Counts I and II; that Defendant Boar's Head Provisions Co., Inc.'s, Motion to Dismiss, (Dkt.18), be **GRANTED** without prejudice, as to Counts V and VI, and **DENIED,** as to Counts I and II; that Defendant, Joseph Egan's, Motion to Dismiss Count IV(B), (Dkt.22), be **GRANTED** with prejudice; that Defendant, Robert S. Martin's, Motion to Dismiss Counts III and IV(A), (Dkt.24), be **GRANTED** with prejudice, as to Count III, and **DENIED** as to Count IV(A); and that Plaintiff, Bernadette Scelta, shall have ten (10) days to amend the Complaint.