999 So.2d 669 (2008)
Jalayna Jones ETHEREDGE and Valerie A. Vana, Appellants.
v.
WALT DISNEY WORLD CO., a Florida corporation, and Walt Disney World Hospitality & Recreation Corporation, a Florida corporation, Appellees.
No. 5D07-3581.
District Court of Appeal of Florida, Fifth District.
December 5, 2008.
Rehearing Denied January 21, 2009.
*670 Jack B Nichols, Orlando, for Appellants.
David C. Knapp of Cabaniss, Smith, Toole & Wiggins, P.L., Maitland, for Appellees.
HARRIS, J.M., Associate Judge.
Appellants, Plaintiffs below, appeal an adverse judgment following a directed verdict in favor of Appellees, Walt Disney World Company and Walt Disney World Hospitality and Recreation Corporation. Because the evidence presented at trial and the reasonable inferences that could be drawn therefrom could sustain a verdict in favor of Plaintiffs, the trial court erred in directing a verdict in favor of Disney, and we reverse.

FACTUAL AND PROCEDURAL BACKGROUND
In July 1998, fifteen year old Jalayna Jones Etheredge, along with her family and friends, was staying at Disney's Fort Wilderness campground in Orlando, Florida. On the evening of July 4th, following a day at the local waterparks, Jalayna and her friends went to meet Jalayna's parents for dinner at Downtown Disney. Upon their arrival, the group parked in West Side Parking Lot L and began to cross the street to the Downtown Disney complex. While crossing the street, Jalayna stepped off the curb and got her ankle caught in a storm drain, and the injuries she sustained ultimately required four surgeries.
At trial, Jalayna stipulated that there was no defect in the design, construction or maintenance of the storm drain. Jalayna also conceded that she could have seen the storm drain if she was looking and that she wasn't paying attention to where she was stepping. Rather than relying on a strict premises liability theory, Jalayna *671 claimed that Disney was negligent in the manner in which it encouraged guests to cross the street.
Specifically, Plaintiff demonstrated that in order for a guest to get from the West Side Parking Lot to Downtown Disney, it would have been necessary to navigate a pathway between handicapped parking spaces lined by five-foot wide striped access walkways up to a sidewalk. The sidewalk contained intermittent plant beds of shrubbery, palm trees and grasses. In attempting to cross the street, Jalayna followed this pathway to a point between two plant beds and stepped off the curb into the storm drain.
Plaintiffs' expert, a traffic transportation and civil engineer, testified that the striped access walkway for the handicapped parking and the landscaping "channeled" pedestrians to cross the street at a point where the storm drain was located, an area described as one of "limited pedestrian safety," rather than at a normal curb. More importantly, there was testimony that a Disney employee was working as a crossing guard and was directing guests, including Jalayna and her group, to cross the street at the precise location of the storm drain.
At the conclusion of Plaintiffs' case, Disney moved for a directed verdict, alleging that Jalayna had failed to establish a prima facie case of negligence. The trial court denied the motion, but stated that "if that crossing guard wasn't there, this case would be gone." At the conclusion of the trial, Disney renewed its motion for directed verdict, and this time the trial judge agreed, finding no evidence legally sufficient to submit the case to a jury. It is from the final judgment entered in Disney's favor that this appeal follows.

STANDARD OF REVIEW
The standard of review on appeal of a trial court's ruling on a motion for directed verdict is the same as the test used by the trial court in ruling on that motion. Marriott Int'l, Inc. v. Perez-Melendez, 855 So.2d 624 (Fla. 5th DCA 2003); Goolsby v. Qazi, 847 So.2d 1001 (Fla. 5th DCA 2003); Scott v. TPI Rests., Inc., 798 So.2d 907 (Fla. 5th DCA 2001). "A motion for directed verdict should be granted when there is no reasonable evidence upon which a jury could legally predicate a verdict in favor of the non-moving party." St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., 784 So.2d 500, 504 (Fla. 5th DCA 2001) (quoting Cecile Resort Ltd. v. Hokanson, 729 So.2d 446, 447 (Fla. 5th DCA 1999)). In other words, a motion for directed verdict shall be granted only if no view of the evidence could support a verdict for the non-moving party and that the trial court therefore determines that no reasonable jury could render a verdict for that party. Scott, 798 So.2d at 908 (citing Blake v. Hi Lu Corp., 781 So.2d 1122 (Fla. 3d DCA 2001)).
In considering a motion for directed verdict, the court is required to evaluate the testimony in the light most favorable to the non-moving party and every reasonable inference deduced from the evidence must be indulged in the non-moving party's favor. Tenny v. Allen, 858 So.2d 1192 (Fla. 5th DCA 2003). If there are conflicts in the evidence or if different reasonable inferences could be drawn from the evidence, then the issue is a factual one that should be submitted to the jury and not be decided by the trial court as a matter of law. See Marriott Int'l.
This is especially true in negligence cases, where directed verdict motions should be treated with special caution because it is the function of the jury to weigh and evaluate the evidence. Scott, 798 So.2d at 909 (citing Jacobs v. Westgate, 766 *672 So.2d 1175, 1179 (Fla. 3d DCA 2000)), see also Nunez v. Lee County, 777 So.2d 1016, 1016 (Fla. 2d DCA 2000) ("Florida law cautions against a motion for directed verdict in negligence cases since the evidence to support the elements of negligence are frequently subject to more than one interpretation.") (quoting Regency Lake Apartments Assocs. Ltd. v. French, 590 So.2d 970, 972 (Fla. 1st DCA 1991)).

ANALYSIS
In its support of the trial court's ruling, Disney relies heavily on the Plaintiffs' stipulation at trial that there was no defect in the design, construction or maintenance of the storm drain itself. Disney also points to Jalayna's own admission that she could have seen the storm drain before stepping into the road if she had been looking, that she wasn't looking where she was walking, that it was light out at the time of the incident and that the storm grate covering the drain was not wet or slippery. Finally Disney correctly argues that a storm drain in and of itself is not inherently dangerous. Therefore, according to Disney, even if it had an employee directing guests to step over the storm drain in order to cross the street (a fact which Disney continuously denied), having guests walk in an area that is not unsafe, is not inherently dangerous and by stipulation is not defective, simply cannot constitute negligence, and that no proper view of the evidence in this case could support a verdict for Plaintiff.
The negligent mode of operation theory relied upon by Plaintiffs is based upon active negligence on the part of a premises owner in the way that owner keeps its premises or conducts its business and how that mode of operation affects its customers. In this case, the question is simply whether the manner in which Disney chose to have guests cross the street (either by being "channeled" to cross at a point of limited pedestrian safety or by being directed to cross at a point where Disney should have foreseen that an invitee could get injured) resulted in an unsafe condition. Markowitz v. Helen Homes of Kendall Corp., 826 So.2d 256 (Fla.2002). Under the negligent mode of operation theory, if the evidence establishes that Disney could reasonably anticipate that a dangerous condition would arise as a result of the way it encouraged guests to cross the street, then the dispositive issue is whether that particular method of operation was in fact negligent and whether the accident that occurred was as a result of that negligence. Owens v. Publix Supermarkets, Inc., 802 So.2d 315 (Fla.2001).
In negligence cases, whether a duty of care exists is generally an issue of law to be determined by the court and, therefore, may be resolved pursuant to a motion for directed verdict. Marriott. Contrary to Disney's assertion, a property owner's duty to maintain its property in a reasonably safe condition is not limited to detecting and warning patrons about obvious or dangerous conditions. "[T]he duty to exercise reasonable care may extend to taking actions to reduce, minimize, or eliminate foreseeable risks before they manifest themselves as particular dangerous conditions on the premises." Markowitz, 826 So.2d at 259.
Clearly Disney owed a duty of reasonable care to Jalayna. Whether that duty was breached, however, and whether that breach proximately caused the plaintiff's injuries, are generally issues of fact to be resolved by the jury, and therefore inappropriate for resolution by directed verdict. Marriott, 855 So.2d at 628. Under these circumstances, the trial court's focus should not have been on the storm drain itself but rather on whether the practice of encouraging guests to cross the *673 street over a storm drain constituted a negligent mode of operation. From the evidence presented at trial, it could certainly be inferred that a reasonable premises owner would not have had people cross the street directly over a storm drain. Whether Disney knew or should have known that its mode of operation in directing invitees to step off a curb over a storm drain could cause danger is a question for the jury.

CONCLUSION
After evaluating the evidence in the light most favorable to Jalayna and indulging all reasonable inferences therefrom in her favor, we are unable to conclude that no reasonable jury could have found in favor of the Plaintiffs. We therefore conclude that entry of a directed verdict in favor of Disney in this case was error. We reverse the order granting the directed verdict and the final judgment entered in favor of Disney and remand for a new trial.
REVERSED AND REMANDED.
SAWAYA and TORPY, JJ., concur.