# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————

Case No. 5D22-2906
LT Case No. 2019-30778-CICI

———————————————

DOLGEN CORP, LLC d/b/a
Dollar General,

     Appellant,

     v.

KIMBERLY DOTY, CHRISTOPHER
DOTY, AND KATHY WILLIAMS,

     Appellees.

———————————————

On appeal from the Circuit Court for Volusia County.
Mary G. Jolley, Judge.

Kimberly Kanoff Berman, of Marshall Dennehey, P.C., Fort
Lauderdale, and Peggy S. Bush, of Marshall Dennehey, P.C.,
Orlando, for Appellant.

Brian J. Lee, of Morgan & Morgan, Jacksonville, for Appellees,
Kimberly Doty and Christopher Doty.

No Appearance for Remaining Appellee.

March 22, 2024

JAY, J.

     In this slip and fall case, Appellant ("Dollar General") raises
two issues for our consideration. We affirm on both and write only

to address the first, which is whether the evidence entitled Dollar General to a directed verdict. We hold it did not.

## I.

On July 3, 2017, a Dollar General store in Port Orange displayed seasonal merchandise in two "U-boats"—carts shaped like hotel baggage carriers—outside the store's entrance. When it started raining that afternoon, Dollar General employee Barbara Ralph moved the U-boats indoors and placed a wet floor sign nearby.

When the rain stopped, Dollar General employee Robert Boarder put the U-boats back outside and moved the wet floor sign. Moments later, Kimberly Doty entered the store. She made it a few steps inside before she slipped and fell. She later sued Dollar General for negligence, alleging that "a puddle of water near the main entrance" caused her to fall.

The case went to a jury trial. At trial, Boarder testified that he was the cashier on duty when Doty fell. He believed that the U-boats "most likely" got wet that day, noting that the rain "was a fairly heavy downpour." In Boarder's view, Ralph put down a wet floor sign "[p]resumably because [the floor] was wet or could get wet." Boarder confirmed that he returned the U-boats to their outdoor position after the rain stopped. He acknowledged that when he did so, he "moved [the wet floor sign] off to the side."

Kathy Williams, a Dollar General lead sales associate who was the manager on duty on July 3rd, testified that she completed an incident report in the immediate aftermath of Doty's fall. Doty published this incident report as her first exhibit at trial. Under the heading, "Cause of Incident," Williams wrote, "Rain outside had to [b]ring in wet U-Boats hadn't gotten wet floor sign down yet." Williams testified that if she "wrote th[at] down at the time," then it was true.

John Stein, a Dollar General district manager, was Dollar General's designated corporate representative. At trial, Doty published excerpts from Stein's deposition. Stein's testimony included this exchange:

> **Q** [Doty's counsel]: What is your understanding of what caused my client to fall on July 3rd, 2017?
>
> **A** [Stein]: Bringing product from outside during a rain. Bringing it inside **and it leaving water behind through the transition**.

(Emphasis added).

Doty testified that when she entered the store on July 3rd, she made it three or four steps inside before her right foot slipped, and she fell. She tried to catch herself with her left hand, but it also hit a wet area and started sliding. Doty further testified that she did not ask Williams to add any content to the incident report.

At the close of Doty's case, Dollar General moved for a directed verdict, claiming there was no evidence that it knew about the water on the floor. The trial court denied the motion. The court suggested that Dollar General's arguments were aimed at the weight rather than the sufficiency of the evidence and reasoned that "the jury has to weigh the incident report collectively with all of the other evidence in the case." Ultimately, the jury found Dollar General liable for Doty's fall. Dollar General moved to set aside the verdict and enter judgment for Dollar General, again claiming there was no evidence showing that it knew about the water on the floor. The court denied the motion. In this appeal, Dollar General repeats its arguments about knowledge, maintaining the evidence warranted a directed defense verdict.

## II.

We review de novo a trial court's ruling on a motion for directed verdict. *Greenshields v. Greenshields*, 312 So. 3d 161, 166 (Fla. 5th DCA 2021).

## A.

When seeking a directed verdict, the movant admits "the truth of all evidentiary facts, as well as every reasonable conclusion or inference favorable to [the opposing party] from those

3

facts." *See Lancheros v. Burke*, 375 So. 3d 927, 929 (Fla. 6th DCA 2023). Therefore, a directed verdict is proper "only when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ about the existence of a material fact and the movant is entitled to judgment as a matter of law." *Vitro Am., Inc. v. Ngo*, 304 So. 3d 379, 383 (Fla. 1st DCA 2020) (quoting *Philip Morris USA Inc. v. Allen*, 116 So. 3d 467, 469 (Fla. 1st DCA 2013)). "If there are conflicts in the evidence or if different reasonable inferences could be drawn from the evidence, then the issue is a factual one that should be submitted to the jury and not be decided by the trial court as a matter of law." *Etheredge v. Walt Disney World Co.*, 999 So. 2d 669, 671 (Fla. 5th DCA 2008).

In a slip and fall case involving a transitory substance in a business, the breach element of the plaintiff's claim "is 'statutorily constrained' by section 768.0755, Florida Statutes." *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278 (Fla. 5th DCA 2023) (quoting *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. 3d DCA 2017)). That statute requires the plaintiff to "prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." § 768.0755(1), Fla. Stat.

As Judge Mizelle recently noted, "[a] business owner has 'actual knowledge' of a dangerous condition when the owner or one of its agents 'knows of or creates the dangerous condition.'" *Eddings v. Target Corp.*, No. 8:22-cv-02060, 2024 WL 414529, at *4 (M.D. Fla. Feb. 5, 2024) (quoting *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001)). "Although the statute codifying the actual . . . knowledge requirement was enacted in 2010, Florida's courts have long recognized the requirement at common law." *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1169 n.1 (11th Cir. 2023); *see also Eddings*, 2024 WL 414529, at *4 (noting that as to the transitory foreign substance statute, "state court decisions prior to 2002 or after 2010 are informative").

### B.

In *Barbour*, this court vacated the trial court's entry of a directed defense verdict in a slip and fall case. *Barbour*, 801 So. 2d

at 955–56, 960. There, the plaintiff slipped on "a roll of toilet paper with the roller mechanism inside the cardboard core lying on the floor [of a restaurant's bathroom]." *Id.* at 956. "[N]o direct evidence was introduced which showed that Brinker [the defendant restaurant] had actual knowledge of the toilet paper roll and roller mechanism being on the restroom floor." *Id.* at 957. "However, Barbour [the plaintiff] did introduce evidence, which . . . indicated that the toilet paper dispensers were under the exclusive control of Brinker." *Id.* "This evidence included photographs of the type of dispenser in use at the time of the accident." *Id.* Two witnesses testified that "a key was needed to unlock the dispenser and Barbour stated that she found the dispenser open immediately after her fall." *Id.* The restaurant's manager stated that "cleaning staff and servers were responsible for filling the dispensers." *Id.*

This court held that because the plaintiff presented evidence showing that "only the servers, managers, and cleaning contractor were responsible for changing the toilet paper and knew how to open the dispenser," the "jury could have reasonably concluded . . . that Brinker had actual knowledge of the dangerous condition, that is the presence of the roller and used roll of toilet paper on the restroom floor." *Id.* For these reasons, a directed verdict for the defendant restaurant was improper. *Id.* at 959–60.

The evidence of actual knowledge in this case is far more compelling than what precluded a directed verdict in *Barbour*. Here, a Dollar General employee placed a wet floor sign near the U-boats after she brought them inside—"[p]resumably because [the floor] was wet." This was consistent with testimony that given how heavily it was raining, the U-boats were "most likely" wet when they entered the store. After the U-boats were taken back outside by Mr. Boarder, he moved the wet floor sign to the side. The acting store manager authored an incident report in which she attributed Doty's fall to wet U-boats and no wet floor sign. And Dollar General's corporate representative—the designated spokesperson for the corporation—testified that Doty's accident occurred because product was brought in "from outside during a rain" and because it left "water behind through the transition."

"[F]ar from a rickety construct of tangentially related facts," *Eddings*, 2024 WL 414529 at *4, this evidence, when viewed in a

light most favorable to Doty, easily created a jury question about whether Dollar General had actual notice of the dangerous condition that caused Doty's fall. *See id.* (rejecting a retail store's motion for summary judgment* in a slip and fall case because the evidence "would permit a reasonable jury to find that the [plastic shopping] bag causing [the plaintiff's] fall was only in his lane because a [store] cashier handed it out or allowed it to be taken," which would qualify as actual knowledge of the hazard). In light of this, Dollar General's claim that it was entitled to a directed verdict—i.e., a defense verdict *as a matter of law*—falls far short.

### III.

A directed verdict is improper when "there are conflicts in the evidence or if different reasonable inferences could be drawn from the evidence" because those conflicts and differences create factual questions for the jury to answer. *Etheredge*, 999 So. 2d at 671. Here, based on the evidence before it, a jury could have reasonably concluded that Dollar General employees knew of or created the dangerous condition that caused Doty's accident. Therefore, the trial court was correct to deny Dollar General's motion for directed verdict.

AFFIRMED.

KILBANE and PRATT, JJ., concur.

---

* Although summary judgment and directed verdict motions arise at different points in litigation, both challenge the legal sufficiency of the opposing party's evidence and claim the movant is entitled to judgment as a matter of law. *See Olsen v. First Team Ford, LTD*, 359 So. 3d 873, 877 (Fla. 5th DCA 2023) (quoting *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021)).

6

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*